**SHARP v. J. R. WATKINS CO.**
No. 4879.

Court of Civil Appeals of Texas.
El Paso.
May 21, 1952.

Rehearing Denied June 18, 1952.

Moore & Moore, Paris, for appellant.

Biggers, Baker & Lloyd, Spencer Carver, Dallas, for appellee.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Dallas County, 114th Judicial District. The statement of the nature of the case made by appellant in his brief is conceded by appellee to be substantially correct, and is adopted by us:

"This is a suit upon a verified account brought by The J. R. Watkins Company, identifying itself as a Delaware corporation, against a principal debtor, Floyd Ernest Cummings, and his two sureties or guarantors of the account, H. A. Sharp and B. L. Nowell. The plaintiff dismissed as to the defendants other than H. A. Sharp, who interposed two defenses: First, that the suit could not be maintained

because The J. R. Watkins Company was a foreign corporation and had no permit to do business in the State of Texas; and, Secondly, because The J. R. Watkins Company in its dealings with Floyd Ernest Cummings violated the anti-trust statutes of the State of Texas.

"A trial by the court without a jury resulted in a judgment for plaintiff and a holding to the effect that neither defense plead by the defendant was supported by the evidence.

"The plaintiff will hereafter be referred to as the appellee, and the defendant Sharp as the appellant."

Appellant's points are in substance that the judgment should be reversed and rendered because of the proceedings had in connection with appellant's timely request for admissions; because the evidence established that appellee's suit originated in an intrastate transaction, appellee being a foreign corporation without a permit to do business in the State of Texas; and because the evidence established an agreement between appellee and Floyd Ernest Cummings, the principal debtor, restricting him to a designated territory in violation of the anti-trust statutes of the State of Texas. The cause should be remanded because the trial court's holding that the transaction giving rise to appellee's suit was interstate commerce is not supported by the evidence, and is contrary to the overwhelming weight of the evidence, and because the trial court's holding that the agreement between appellee and Floyd Ernest Cummings did not restrict him to a designated territory was not supported by the evidence and is contrary to the overwhelming weight of the evidence.

At appellant's request the court filed Findings of Fact and Conclusions of Law. Findings 7 and 8 are:

"7. All sales from Watkins Company to Cummings were shipped in interstate commerce and Watkins Company was not doing business in the State of Texas.

"8. The contract entered into between Watkins Company and Cummings did not provide that Cummings sell only in a designated territory or at an agreed price."

The record reveals that on August 1, 1951, appellant filed request for admissions from appellee as provided by Rule 169, T.R.C.P., and that on August 20, 1951, appellee filed its answer to such request. The judgment recites that appellant made a motion to the court that upon the trial the request for admissions be admitted for want of sufficient answer thereto, and

" * * * the court having heard such motion and the argument of counsel thereon, and being of the opinion and finding that such answers of the J. R. Watkins Company, plaintiff, were insufficient but that justice would be served by permitting further answer thereto by the plaintiff:

"It is therefore ordered, adjudged and decreed that the plaintiff, J. R. Watkins Company, shall be permitted to make and file as of the time of trial its denial of the defendant H. A. Sharp's request for admissions."

By supplemental transcript it appears that by motion filed April 3, 1952, appellee made known to the court that it had then filed its answer to appellant's request for admissions as permitted by the judgment of the court, and moved the court to order the same incorporated in a supplemental transcript to be forwarded to this court. This was done. It appears from the supplemental transcript that the amended answer to the request for admissions, which consisted of a categorical denial of all requests except one, which was admitted, was filed September 4, 1951, the date the judgment recites the cause came on to be heard; also that such amended answer was sworn to on October 18, 1951. The transcript does not reveal when the judgment was actually rendered except it is recited in the appeal bond that it was recovered on September 10, 1951.

It is appellant's contention that by permitting appellee to file its denial of appellant's request for admissions as of the time of trial, the court in effect nullified Rule 169 supra, citing Croan v. McKinney,

742

Tex.Civ.App., 185 S.W.2d 768, and that under the rule and the court's judgment finding the original answer insufficient, each of the matters of which an admission was requested must be admitted. We are inclined to agree with this contention. Appellee made no motion for allowance of further time to answer the request. Apparently permission to make such answer was granted by the judgment itself, which necessarily implied that it could be filed after judgment, although the judgment states that it shall be filed "as of the time of trial". It is inferable, we think, that what actually happened is that appellee announced to the court that it would deny the matters of which an admission was requested and by the judgment the court permitted the formal written denial to be filed after judgment. That such procedure would in effect abrogate Rule 169 and deny the party making the request the benefit of the rule is, we think, apparent. However, in the view we take of the case it is unnecessary to rule authoritatively on this question and we do not do so.

If each of the matters of which an admission was requested and which was not specifically denied be deemed admitted, they disclose the following:

That on the 3rd day of August, 1944, and when the request was made plaintiff's products were being sold in the State of Texas (III and IV); that on the 3rd day of August 1944 and when the request was made plaintiff's products were being sold in the State of Texas by peddlers (V); that on the 3rd day of August 1944 and when the request was made plaintiff's products were being sold in the State of Texas by individuals who called on consumers, particularly housewives, and make sales of plaintiff's products and deliver the products sold at the time of the sale or who take orders for plaintiff's products and later deliver the ordered product to the customer (VI, VII and VIII); that some if not all orders so taken were filled out of a warehouse in the State of Texas (IX); that plaintiff's products are merchandised and marketed by individuals located at various places in the State of Texas (XI); that said individuals selling plaintiff's products are located in the State of Texas so as to cover a designated territory and so as not to interfere with the territory of one another (XII); that plaintiff on the 3rd day of August 1944 and at some time or times subsequent thereto had established prices for at least some of its products, including those handled by Floyd Ernest Cummings (XIII); that the persons selling plaintiff's products as above mentioned purchased them from plaintiff (XV); that plaintiff printed and distributed to persons selling its products a booklet or pamphlet in which it set out what was expected of them and that this booklet or pamphlet warned against selling to consumers for less than the price either contained in such pamphlet or issued by plaintiff from time to time (XVI); that such pamphlet also warned against one person selling plaintiff's products involving another person's territory (XVII); that if a person selling plaintiff's products habitually violated either of the foregoing warnings that person's contract with the plaintiff would be terminated by plaintiff (XVIII).

■ The crucial questions in the case were, as to its dealings with Cummings: (1) Was plaintiff doing business in Texas, it having admitted that it had no permit to do so, and (2) Did plaintiff violate our anti-trust statute by restricting Cummings as to the territory in which he should sell such products? Of course the answers to these questions depend upon the relationship existing between plaintiff and Cummings at the relevant time. If Cummings was merely an employee or agent of plaintiff in selling its products, then plaintiff was doing business in Texas and it did not violate the anti-trust statute by restricting his territory or fixing the prices at which he sold. If the relationship was that of vendor and purchaser, then plaintiff was not doing business in Texas, and it did violate the anti-trust statute if it limited the territory in which Cummings could sell or fixed the prices at which he could sell its products.

■ We think any or all of the above admissions fail to establish the answer to either of the crucial questions as a matter of

law. Certainly the fact that plaintiff's products were being sold in Texas by peddlers in the manner inquired about in requests VI, VII and VIII can have no bearing on the relationship between plaintiff and Cummings, nor could the fact that persons selling plaintiff's products purchased them from plaintiff. Request XV is immaterial in the absence of competent evidence showing that plaintiff either restricted the territory in which such sales were made or fixed the price thereof. Such matters are clearly res inter alios acta and of no probative force on the material issues; the same may be said of requests IX, XI and XII, and also that the mere fact that the individuals who marketed plaintiff's products were so located as to cover a designated territory and not interfere with the territory of each other is not at all conclusive that plaintiff restricted such individuals in their territory. It may just as logically have been an arrangement between such individuals for their own convenience and advantage; further, that the warehouse inquired about in request IX may have been a warehouse belonging to or controlled by the individuals soliciting the orders and not by plaintiff. Request XIII is ambiguous as stated by appellee in its answer thereto. It is not clear whether the prices which it asserts plaintiff established for its products were the prices at which it sold them to purchasers, including Cummings, or prices fixed by it for the resale of such products by such purchasers. It could mean either of such prices and in view of appellee's answer we cannot hold that plaintiff admitted that it had established prices at which its products should be resold by purchasers thereof. Requests XVI, XVII and XVIII also called for matters which are res inter alios acta and if relevant at all are not conclusive of material questions. Even though appellee was doing business in Texas without a permit it was not barred from recovery on a demand which arose out of interstate commerce, Continental Supply Co. v. Hoffman, 135 Tex. 552, 144 S.W.2d 253 (Com.App. op. adopted), and by parity of reasoning even though the appellee had violated the anti-trust statute in its trans-

actions with other persons, such violation would not bar it from recovering from Cummings or appellant if there were no violation in the transactions with them. Therefore, even though the matters of which an admission was requested be deemed admitted, it was at most questions of fact whether plaintiff was doing business in Texas or had violated the anti-trust statute. The burden of proof was upon appellant to establish either or both of these defenses. In addition to the claimed admissions he sought to do so by the following: A letterhead of appellee on which it is stated that it had 150 branches, 134 distributors and 10,000 dealers; by witnesses Wortham and Payne, each of whom testified that they had handled appellee's products subsequent to April 1, 1947, the expiration of the guaranty here involved, and had attended sales meetings held by representatives of appellee at which appellee through such representatives distributed suggested lists of retail prices and had designated territory to which he was restricted and told him if he violated his territory appellee would discontinue sending him merchandise. Each of these witnesses testified that he signed a contract with appellee which was in appellee's possession and which he was unable to obtain. This testimony, we think, was inadmissible and is of no probative force to show the contract between appellee and Cummings, 17 Tex.Jur. p. 388, Sec. 135; Id., p. 379, Sec. 131; Vol. 24, Texas Law Review, No. 3, p. 351 et seq.; Texas Law of Evidence, McCormick & Ray, p. 904–5, Sec. 696; and for like reason such testimony has no probative force to show coercion by plaintiff to force Cummings to restrict his activities to certain territory or to sell at the suggested prices. Certainly such evidence is not conclusive and does not establish as a matter of law either of the facts essential to appellant's defense, namely that in its transactions with Cummings appellee was doing business in Texas without a permit or that it violated the anti-trust statute.

We note that the trial court's findings above quoted went farther than required to sustain the judgment against appellant.

744

It was only necessary that the trial court find that appellant had not established the fact that appellee was doing business in Texas in its transactions with Cummings, without a permit, or that the contract between appellee and Cummings provided that Cummings sell only in a designated territory or at agreed prices rather than that such were the facts since these were defensive matters.

The judgment is affirmed.

PRICE, C. J., did not participate in the disposition of this case.